# In the United States Court of Federal Claims

No. 22-1268
Filed: May 1, 2025

_____

|  |  |
|---|---|
| JON LETKO, *in his capacity as Tax Matters Partner of U.S. Healthcare Supply, LLC*, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

_____

*Thomas A. Gentile*, Wilson Elser Moskowitz Edelman & Dicker LLP, Florham Park, NJ, for plaintiff.

*Emily J. Van Dam*, U.S. Department of Justice - Tax Division, Washington, DC, for defendant.

## OPINION AND ORDER

When the Internal Revenue Service ("IRS") makes a post-audit "adjustment" to a partnership's return, the tax matters partner ("TMP") of the partnership can petition for "readjustment" either in this Court, the appropriate federal district court, or the U.S. Tax Court. 26 U.S.C. § 6226(a) (2012).[1] In this Court and district courts, jurisdiction vests only if the petitioner deposits a certain sum with the Secretary of the Treasury "on or before the day the petition is filed." § 6226(e)(1). There is a safety valve, however. If the petitioner fails to meet the deposit requirement, courts may still deem "the jurisdictional requirements . . . satisfied" if there "has been a good faith attempt" to deposit the correct sum and the plaintiff corrects "any shortfall" in a "timely" manner. *Id*.

This suit was commenced by U.S. Healthcare Supply, LLC ("USHS"), and is now being pursued by USHS's TMP, Jon Letko. Neither USHS nor Mr. Letko have made a deposit thus far. Before the Court is defendant United States's renewed motion to dismiss for lack of subject-matter jurisdiction, in which the United States argues that

---

[1] Unless stated otherwise, all citations to statutory provisions refer to 26 U.S.C.—the Internal Revenue Code—in effect during 2016, the tax year relevant to this case. The opinion refers to the 2016 version of the Code in the present tense.

the jurisdictional deposit requirement is at least $93,343.00, or alternatively at least $27,666.00.  Mr. Letko responds that the deposit owed is $0, or alternatively that the Court should permit him to meet any shortfall under the good-faith exception.

The government also argues that the suit is time-barred because only the TMP Mr. Letko, not USHS, is entitled to sue under the statute, and he was substituted in as plaintiff after the statute of limitations expired.  Mr. Letko responds that he has always been the true plaintiff in this case, and a minor clerical mistake on his part does not deprive the Court of jurisdiction.

The Court concludes the suit is not time-barred.  The Court also holds that it would be premature to determine the jurisdictional deposit amount at this stage because the record is not sufficiently developed.  Accordingly, defendant's renewed motion to dismiss is denied without prejudice, except that dismissal on statute-of-limitations grounds is denied with prejudice.

The Court also finds it exasperating that the parties are briefing the critical matter of our jurisdiction piece by piece.  To ensure that the third motion to dismiss for lack of jurisdiction—if one is needed at all—is the last, the Court explains how § 6226 operates and admonishes the parties to (1) work in good faith to stipulate to basic jurisdictional facts and (2) if necessary, jointly propose a schedule for jurisdictional discovery.  Mr. Letko is advised that he is likely to qualify for the good-faith exception *provided that he meets certain conditions going forward*.

## I.    Relevant Facts

### A.    Legal Background

Partnerships are "conduit" entities for tax purposes, meaning that the tax on a partnership's income is not paid by the partnership, but instead "allocated among the partners for inclusion in their respective returns."  *Clearmeadow Invs., LLC v. United States*, 87 Fed. Cl. 509, 518 (2009).  Historically, this treatment of partnerships made audits inefficient and unwieldy.  "Before 1982, the IRS had no way of correcting errors on a partnership's return in a single, unified proceeding."  *United States v. Woods*, 571 U.S. 31, 38 (2013).  Audits took the form of "deficiency proceedings [against partners] at the individual-taxpayer level," leading to "duplicative proceedings and the potential for inconsistent treatment of partners in the same partnership."  *Id.*  To remedy the problem, Congress passed the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324.  From 1982 until its repeal effective on January 1, 2018, under the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584, TEFRA created a two-step process for both filing and auditing partnership-related items.

*Filing*.  Under TEFRA, partnerships are required to file an informational return consisting of one Form 1065 and several Schedules K-1, one for each partner.  In the Form 1065, the partnership lists its income, losses, deduction, assets and liabilities, and

each partner's stake in the partnership. *See* § 6031. In each partner's Schedule K-1, the partnership describes the partner's share of the partnership's tax items. *Id.* Together, the Form 1065 and the various Schedules K-1 permit the IRS to determine the tax treatment of "partnership items . . . at the partnership level." § 6221.

In the second step, partners file their respective personal tax returns. A partner can claim tax benefits arising from the partnership's activities subject to two independent limitations. First, the claimed benefit should be recognized by the tax code. For example, a partner may deduct, from his taxable income, his share of the partnership's "ordinary or business expenses" but not his share of "any fine or similar penalty paid [by the partnership] to a government for the violation of any law." § 162(a), (f). Second, the claimed benefits must not exceed the partner's "adjusted outside basis" in the partnership. *E.g.*, §§ 704(d), 731(a). This rule warrants some explanation. The term "basis" refers to "[t]he value assigned to a taxpayer's investment in property." BASIS, Black's Law Dictionary (12th ed. 2024). The law distinguishes between 'inside basis'—which is the value assigned to the *partnership's* investment— and 'outside basis,' which is the value assigned to a *partner's* investment share in the partnership. The term 'outside *adjusted* basis' refers to the value of the partner's investment after accounting for events that enhance or decrease its value. For example, it is adjusted upward if the partner contributes new assets or the partnership experience gains; and downward if the partner contributes liabilities, receives distributions, or the partnership incurs losses. *See* § 705.

Intuitively, the outside adjusted basis represents the partner's net investment in the partnership, which has *already* been taxed (after all, the partner earned, and presumably paid taxes on, the past income he invested in the partnership). To avoid double taxation, federal law deems items that change a partner's position by an amount *less* than the basis as tax-deductible or tax-exempt. *See, e.g.*, *Duffy v. Comm'r of Internal Revenue*, 120 T.C.M. (CCH) 39, 42 (Tax Ct. 2020) ("[O]utside basis . . . absorb[s] a loss."). For example, if a partner's outside basis is $1,000,000, a distribution of $1,200,000 would be subject to mixed tax treatment. The outside basis would "absorb"—allow the partner to deduct—$1,000,000 of the distribution, but not the remaining $200,000. §§ 704(d), 705(a), 731(a).

***Auditing***. Audits under TEFRA are also conducted in two steps:

> First, the IRS must initiate proceedings at the partnership level to adjust "partnership items," those relevant to the partnership as a whole . . . . [Second, o]nce the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting "computational adjustments" in the tax liability of the individual partners.

*Woods*, 571 U.S. at 39. If the IRS determines during the first proceeding that partnership-level corrections—"adjustments"—are necessary, it issues a Notice of Final

Partnership Administrative Adjustment ("FPAA") to the designated TMP and certain other partners.[2]  § 6223(a)(2).  The TMP can then either accept the adjustment, or "petition for a readjustment" of the partnership return in this Court, the Tax Court, or the appropriate federal district court "[w]ithin 90 days after the day on which [the FPAA] is mailed to the tax matters partner."[3]  § 6226(a).  To create jurisdiction in this Court and federal district courts (but not the Tax Court) the partner must:

> deposit[] with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of the partnership items on the partnership return, as adjusted by the [FPAA].

§ 6226(e)(1).[4]  Congress also created a safety valve for petitioners who act in good faith:

> The court may by order provide that the jurisdictional requirements of this paragraph are satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount to be deposited is timely corrected.

*Id.*

## B.    Factual background

USHS is a New Jersey partnership engaged in the business of "mail-order supply of durable medical equipment."  Am. Compl. at 2, ECF No. 21.  The entity has two partners:  Mr. Letko, and Letko Asset Management, LLC ("LAM").  *Id.*  LAM owns a 99% stake in USHS.  *Id.* (disregarding typo).  Mr. Letko holds a 1% interest in USHS; but he is also the owner of LAM.  *Id.*  Mr. Letko is the TMP of USHS.  *Id.*

In 2011, USHS, Mr. Letko, and several other parties entered into an agreement with the United States to settle certain claims arising from USHS's billing practices for medical equipment provided to Medicare beneficiaries ("the Settlement Agreement").

---

[2]    The tax matters partner is "the partner with prime responsibility for representing the partnership in any audit or resulting tax litigation."  *Prestop Holdings, LLC v. United States*, 96 Fed. Cl. 244, 247 (2010); *see also* § 6231(a)(7).

[3]    TEFRA also permits certain other partners to bring suit if the TMP fails to act.  *See* § 6226(b).

[4]    Because Section 6226(e)(1) focuses on the tax liability of the *filing partner* rather than all partners put together, the petitioner may only be required to deposit a fraction of the amount in controversy—a quirk that Congress fixed in the Bipartisan Budget Act of 2015, but only prospectively for tax years 2018 and after.  *See* Pub. L. No. 114-74 § 1101(c)(1), 129 Stat. at 634 (codified at 26 U.S.C. § 6234(b)(1) (2024)).

Am. Compl. Ex. A, ECF No. 21-1.  Under the Settlement Agreement, each defendant agreed to make payments to the United States.  *Id.* at 2.  USHS agreed to pay $5,000,000.00.  *Id.*  USHS made good on that promise in 2016, when it paid $5,112,448.36 ($5,000,000.00 plus interest) to the government.  Am. Compl. at 3.  This suit pertains to the tax treatment of that payment on USHS's 2016 partnership return and Mr. Letko's personal return.  The Court first summarizes the returns, and then turns to the IRS's audit of those returns.

***USHS's Form 1065****.*  USHS's Form 1065 reported the $5,112,448.36 settlement payment as an "ordinary and necessary expense" deductible under § 162(a).  *Id.* at 2–3; Def.'s Mot. Dismiss Ex. 1 at 1, ECF No. 24-1 [hereinafter USHS Return].  Together with other expenses, USHS reported an ordinary business loss of $15,866,479.00.  Am. Compl. at 2 n.1; USHS Return at 1.  Separately, the form also reported a $6,000,000.00 distribution to the partners.  USHS Return at 18–19.

***USHS's Schedule K-1 for Mr. Letko.***  USHS's Schedule K-1 for Mr. Letko specified his share of the partnership items mentioned above.  As the owner of a 1% interest, Mr. Letko was attributed 1% of the $15,866,479.00 claimed in ordinary business losses and 1% of the $6,000,000.00 distribution: $158,665 and $60,000, respectively.  USHS Return at 6.  The Schedule K-1 also reported the following items relevant to calculating his outside adjusted basis:

1. "Beginning capital account: -$141,372";
2. "Capital contributed during the year: [None]";
3. "Current year . . .  decrease: -$158,230"; and
4. "[D]istributions: $60,000."

*Id.*  After adjusting for these events, his "[e]nding capital account" was "-$359,602." *Id.*

***Mr. Letko's personal tax return in the year 2016.***  In his personal return for tax year 2016, Mr. Letko claimed a deduction for his share of USHS's ordinary business losses—$158,665.00 according to his Schedule K-1.  Def.'s Mot. to Dismiss Ex. 2 at 17, ECF No. 24-2 [hereinafter Letko Return].  He also claimed a tax deduction on his share of the distribution—$60,000.00 according to his Schedule K-1—by not reporting it as a taxable capital gain.  *Id.*  Note the underlying assumptions.  First, by claiming the entirety of the $158,665.00, Mr. Letko implicitly asserted that the settlement payment is not a fine or penalty under § 162(a).  Second, he implicitly concluded that his outside adjusted basis in USHS exceeds $218,665.00, the sum of the two claimed tax benefits.

***Mr. Letko's personal tax return in subsequent years.***  In tax year 2016, Mr. Letko claimed tax benefits associated with his 1% share of USHS only.  However, as the sole owner of LAM, he is also the *in*direct owner of the remaining 99%.  The government represents that he may have "carried forward" the items attributable to him indirectly

through LAM "to subsequent tax years." Def.'s Mot. Dismiss at 13 n.7. The Court is unable to say more because Mr. Letko's post-2016 tax returns are not in the record.

***Audit of USHS's partnership return***. The IRS first audited USHS's partnership return and then Mr. Letko's personal tax return. The partnership audit culminated in the issuance of an FPAA on June 13, 2022. Am. Compl. at 4; *id.* Ex. D [hereinafter FPAA]. The only adjustment in the FPAA relevant to the instant motion is the deduction disallowance. Out of the $15,866,479.00 claimed by USHS in ordinary business losses, the FPAA disallowed (1) $5,026,247.00 out of the $5,112,448.36 settlement payment,[5] apparently on the grounds that the payment *was* a fine or penalty under § 162(f); and (2) a further $1,297,714.00 in gross receipts and sales. FPAA at 6. Thus, in total, the FPAA disallowed $6,323,421.00 in ordinary business losses. *Id.*

***Audit of Mr. Letko's 2016 return.*** The IRS then audited Mr. Letko's personal returns, the results of which are recorded in two separate individual deficiency notices (called Forms 4549-A).

The first Form 4549-A ("Initial Form 4549-A") was issued on June 12, 2023. Def.'s Mot. Dismiss Ex. 3, ECF No. 24-3 [hereinafter Initial Form 4549-A]. That notice made three relevant adjustments:

1. *Deduction disallowance*: The IRS disallowed $63,234.00 of the $158,665.00 in ordinary losses claimed by Mr. Letko. *Id.* at 1. The IRS explained that this individual disallowance was based on the partnership-deduction disallowance of $6,323,412.00 in the FPAA. *See* Def.'s Mot. Dismiss Ex. 4 at 1, ECF No. 24-4 [hereinafter Expl. Adjustments].

2. *Further deduction disallowance (disallowance of basis)*: The IRS further disallowed the remaining ordinary loss deduction ($158,665.00 less $63,234.00) on the grounds that Mr. Letko's outside adjusted basis in USHS was zero. Initial Form 4549-A at 1; Expl. Adjustments at 1.

3. *Unreported taxable distribution adjustment (disallowance of basis)*: The IRS determined that the $60,000.00 Mr. Letko received in distributions from USHS was a taxable capital gain—once against because his outside adjusted basis in USHS was zero. Expl. Adjustments at 1.

All told, the Initial Form 4549-A concluded that Mr. Letko owed an additional $93,343.00 in taxes, not counting penalties. *Id.* at 1.

The second Form 4549-A was issued by the IRS on October 18, 2023. Pl.'s Resp. Ex. 2, ECF No. 30-2 [hereinafter Revised Form 4549-A]. The form states that "[t]his Report Supersedes the Report Issued 6/12/2023." *Id.* at 2. In this form, the IRS continued to apply the disallowance deduction of $63,234.00, but withdrew its contentions that Mr. Letko had improperly deducted the remaining ordinary loss

---

[5]    The record does not reveal why the IRS disallowed only a portion of the settlement payment.

improperly failed to report the $60,000.00 distribution. *Id.* at 3. Thus, the revised form implicitly conceded that Mr. Letko's outside basis was not zero. Mr. Letko now owed $27,666.00 in additional taxes, not counting penalties. *Id.*

### C.    Procedural History

This petition for readjustment was filed by USHS on September 9, 2022. Compl., ECF No. 1. After one round of briefing on motion to dismiss, the Court gave leave to file an amended complaint. Order Denying Mot. Dismiss Without Prejudice, ECF No. 16. On January 12, 2024, the amended complaint was filed by TMP Jon Letko as the new plaintiff. Am. Compl. at 1. On March 12, 2024, defendant filed a renewed motion to dismiss for lack of jurisdiction. Def.'s Mot. Dismiss, ECF No. 24. On May 16, 2024, plaintiff filed his brief in opposition. Pl.'s Resp., ECF No. 30. Defendant replied on June 6, 2024. Def.'s Reply, ECF No. 31. The Court held oral argument on August 19, 2024.

## II.    Standard of Review

The Court must dismiss an action if it determines at any time that it lacks subject-matter jurisdiction. R. Ct. Fed. Cl. 12(h)(3). To survive a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). When a Rule 12(b)(1) motion "challenges the truth of jurisdictional facts alleged . . . , the Court accepts as true all uncontroverted factual allegations in the complaint and construes them in the light most favorable to the plaintiff." *Chemehuevi Indian Tribe v. United States*, 104 F.4th 1314, 1320 (Fed. Cir. 2024) (quoting *Creative Mgmt. Servs., LLC v. United States*, 989 F.3d 955, 961 n.4 (Fed. Cir. 2021)). The Court may look to "evidence outside of the pleadings" to determine whether subject-matter jurisdiction exists. *Solute Consulting v. United States*, 103 Fed. Cl. 783, 790 (2012) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947)). The consideration of jurisdictional facts outside the complaint does not convert the motion into one for summary judgment. *See Doyle v. United States*, 129 Fed. Cl. 147, 153 (2016) (citing *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011)).

## III.    Discussion

The Court is called upon to decide three issues. First, how much Mr. Letko needed to deposit under Section 6226(e)(1) to trigger our jurisdiction. Second, if the amount is greater than zero, whether there "has been a good faith attempt" by Mr. Letko—who has not deposited any amount so far—to satisfy the requirements of the statute. Lastly, whether the suit is time-barred because even though the lawsuit was timely, the proper plaintiff was substituted in after the statute of limitations had expired.

A.      **Section 6226(e)(1)**

1.      **Jurisdictional Deposit Amount**

*a.  The parties' positions*

Under TEFRA, the suing partner must deposit a sum equal to "the amount by which the tax liability of the partner would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of the partnership items on the partnership return, as adjusted by the [FPAA]."  § 6226(e)(1). The government bifurcates the deposit calculation into the increase in Mr. Letko's tax liability in tax year 2016, and a potential increase in his liability in future tax years arising from carrying forward "passive losses" associated with his "indirect interest in the partnership via [LAM]."  *See* Def.'s Mot. Dismiss at 13 n.7.  The government then argues that, because the increase in Mr. Letko's tax liability in 2016 alone is greater than zero, the Court should dismiss the case without addressing his tax liability in future tax years.  *Id.*  For simplicity, the Court will first consider the 2016 tax year by itself, and then address future tax years separately.

As to tax year 2016, the government argues that this Court should rely on the Initial Form 4549-A, in which the IRS determined that Mr. Letko's tax deficiency is $93,343.00.  As explained earlier, that form made three adjustments to Mr. Letko's return: the $63,234.00 "deduction disallowance" flowing from the disallowance of ordinary business losses at the partnership level in the FPAA; and the "further deduction disallowance" and "unreported taxable distribution adjustment," both of presume that Mr. Letko's outside basis is zero.  The government argues that these calculations are correct because Mr. Letko's outside basis is indeed zero, and the resulting tax deficiency *is* "the IRS's computation of [Mr.] Letko's *jurisdictional deposit*," at least as to tax year 2016.  Def.'s Mot. Dismiss at 17 (emphasis added).

In response, Mr. Letko first sets up a 'battle of the tax deficiency forms.'  He suggests that the Revised Form 4549-A—in which the IRS concludes that his outside basis is *not* zero and makes the "deduction disallowance" only—reflects the agency's official position. Pl.'s Resp. at 7 n.1.  Mr. Letko also presents an affidavit from his accountant, Edward P. Portice, stating that Mr. Letko's outside basis in USHS is $243,539.51.  *Id.* at 6–7.  Because the Revised Final 4549-A sets Mr. Letko's tax deficiency at $27,666.00, that brings down Mr. Letko's estimate of the jurisdictional deposit amount to $27,666.00.  Mr. Letko further argues that the deposit is zero, because his outside basis "is much more than enough to obviate any deposit requirement on a supposed increase of income from partnership items of $93,343."  *Id.*

In reply, the government does not explain why Mr. Portice's calculation of the outside basis is incorrect.  Instead, it contends that, even if the Revised Form 4549-A were correct, Mr. Letko's tax liability for 2016 would increase by $27,666.00 because of adjustments to the FPAA.  Def.'s Reply at 3.

-8-

As to subsequent tax years, the government preserves the argument that any increase in Mr. Letko's tax liability in future years must be factored into the jurisdictional deposit calculation, while acknowledging that this Court is split on the question. Def.'s Mot. Dismiss at 13 n.7.[6] Although "the IRS [has so far not been able to] calculate [Mr.] Letko's increased tax liability under the FPAA for the 2017 through 2021 tax years based on the document received from plaintiff's counsel," the government argues that the Court need not get into the details because the increase in his liability for tax year 2016 alone shows that the deposit amount is greater than zero. *Id.* Mr. Letko's response does not address future tax years.

### b. Discussion

"Our analysis begins with the text of the Tax Code." *Philadelphia Energy Sols. Ref. & Mktg., LLC v. United States*, 89 F.4th 1364, 1367 (Fed. Cir. 2024) (citing *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019)). "When a statute's language is plain, our sole function is to enforce the statute according to its terms." *Bartels Tr. for benefit of Cornell Univ. ex rel. Bartels v. United States*, 617 F.3d 1357, 1361 (Fed. Cir. 2010). Applying these principles, the Court concludes that Section 6226(e)(1) plainly sets forth a three-step method to determine the deposit amount: (1) identify which "partnership items on the partnership return" were adjusted by the FPAA; (2) ascertain the changes necessary in the partner's return to ensure that "the treatment of the partnership items" in his return is "consistent with the treatment of the partnership items on the partnership return" as revised by the FPAA; and (3) compare the partner's tax liability before and after the changes in his return.

On the first question—how the FPAA adjusted partnership items on USHS's return—neither party's interpretation is faithful to the text. Mr. Letko calculates the deposit amount without ever identifying which items adjusted by the FPAA count as partnership items. *See* Pl.'s Resp. at 4–7. The government briefly acknowledges that the Initial Form 4549-A "reflects change to [Mr.] Letko's individual tax liability based on adjustments to partnership items, *as well as adjustments to affected [i.e., non-partnership] items*." Def.'s Mot. Dismiss at 13 (emphasis and alteration added). At the same time, however, the government also claims that the *entire* change—$93,343.00—represents "[t]he IRS's computation of [Mr.] Letko's jurisdictional deposit." *Id.* at 12.

A partnership item is defined by statute as "any item required to be taken into account for the partnership's taxable year . . . to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3). As relevant here, the regulations provide that partnership items include "[t]he partnership aggregate and each partner's share" of

---

[6]     This Court has held in two cases—*Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385 (2008) and *Russian Recovery, Ltd. v. United States*, 90 Fed. Cl. 698 (2009)—that the deposit amount equals the relevant increase in the suing partner's tax liability "for all years and amount by which [that partner's] individual returns are affected by the FPAA." *Russian Recovery*, 90 Fed. Cl. at 706; *Kislev Partners*, 84 Fed. Cl. 390. However, in *Prestop Holdings, LLC v. United States*, 96 Fed. Cl. 244 (2010), the Court held that the partner "need only pay the taxes due for the specific year in suit," *id.* at 256.

several items, including "[i]tems of income, gain loss, deduction, or credit of the partnership"; "[e]xpenditures by the partnership not deductible in computing its taxable income"; "[p]artnership liabilities"; and "[d]istributions from the partnership." 26 C.F.R. § 301.6501(o)-3 (b)(1)(i)–(v), (4)(ii) (2016). Under TEFRA, the tax treatment of these items "must be determined in a single proceeding at the partnership level," *Southgate Master Fund, LLC ex rel. Montgomery Cap. Advisors, LLC v. United States*, 651 F. Supp. 2d 596, 647–48 (N.D. Tex. 2009), so as to "promot[e] parity between a partnership's aggregate inside basis . . . and its partners' outside bases," *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 978 (Fed. Cir. 2009). The only partnership items addressed in the FPAA are:

- Disallowance of $6,323,421.00 in ordinary losses, reducing USHS's net earnings loss from $15,872,146.00 to $9,548,725.00, FPAA at 6; and
- Four adjustments to USHS's liabilities, *id.* at 6–7.

These adjustments and their counterpart adjustments in the revised K-1 schedules[7] are the only partnership-level adjustments relevant for purposes of calculating jurisdictional deposit.

Importantly, a partner's outside basis is *not* a partnership item, but an "affected" item. *United States v. Woods*, 571 U.S. 31, 42 (2013); *Schell v. United States*, 589 F.3d 1378, 1381–82 (Fed. Cir. 2009). The treatment of affected items is not "determined at the partnership level," § 6231(a)(3), and the Court does not even have jurisdiction to "make a formal adjustment of any partner's outside basis in this partnership-level proceeding." *Woods*, 571 U.S. at 42. Therefore, for purposes of the first step, the Court ignores any adjustment of Mr. Letko's outside basis during the partnership-level proceeding.

The Court next turns to the second step: determining what changes must be made to Mr. Letko's 2016 return to ensure that it is "consistent" with the adjustments to partnership items in the FPAA. § 6226(e)(1). The parties appear to agree that no adjustment is needed in Mr. Letko's 2016 tax returns to ensure conformity with the four adjustments to USHS's liabilities referenced above. FPAA at 6–7; Def.'s Mot. Dismiss at 13; Pl.'s Resp. at 6. Therefore, the question is how Mr. Letko's tax return can be made consistent with the disallowance of $6,323,421.00 in ordinary losses. The answer is straightforward: Mr. Letko's 2016 tax return is fully consistent with the FPAA if his reported ordinary loss is reduced by his share of the disallowance, $63,234.00. *See* Initial Form 4549-A at 1; Revised Form 4549-A at 1.

The other two disallowances in the Initial Form 4549-A—the "further deduction disallowance" and the "unreported taxable distribution" adjustments—even if valid, are not relevant to calculating the deposit amount, because those adjustments are based on

---

[7]    The FPAA does not explicitly state how each partner's Schedule K-1 would have to be adjusted to conform with the partnership-level adjustments in the FPAA. It is unclear if the IRS releases revised Schedules K-1. At any rate, such revisions are not in the record. As a result, the Court currently has no option but to make inferences about adjustments to the Schedules K-1.

adjustments to Mr. Letko's outside adjusted basis, a *non*-partnership item irrelevant for purposes of § 6226(e)(1). Expl. Adjustments at 1. To see why they are irrelevant, consider that if Mr. Letko did indeed miscalculate his outside adjusted basis, his tax return would be inconsistent with the *original*, pre-FPAA partnership return filed by USHS as well. In other words, if the IRS skipped the partnership audit and simply conducted an individual audit, his deductions would still have been disallowed and his distribution taxed. These purely individual-level issues, even though they implicate Mr. Letko's treatment of *affected* items relating to the partnership, are outside the scope of this partnership-level proceeding. *Woods*, 571 U.S. at 42.

The Court's emphasis on the distinction between partnership and affected items is not formalistic line-drawing. If Mr. Letko were required to deposit purely individual-level deficiencies, he would be depositing monies that would not be returned *even if he prevailed in this proceeding*. That is simply not the purpose of deposit requirements in tax suits. *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (construing § 1346) (stating that Congress's objective is to ensure "full payment of [a tax] assessment before a refund suit [can] be brought"). Therefore, the $63,234.00 disallowance of ordinary losses is the only relevant adjustment in step two.

Finally, turn to step three: ascertaining the increase in Mr. Letko's individual tax liability because of the sole change in step two, the disallowance of $63,234.00 in ordinary losses. At this step, Mr. Letko's outside adjusted basis becomes relevant—but not in the way the parties assume. The government argues that Mr. Letko's outside adjusted basis is zero, presumably because it supports a high tax deficiency for 2016: $93,343.00. But while theory would indeed imply a tax deficiency of $93,343.00, none of that deficiency would be attributable *to the FPAA*: *Without* the disallowance, he would be barred from deducting the entire $158,665.00 because his outside adjusted basis is zero; *with* the disallowance, $63,234.00 would be non-deductible by operation of § 162(a) and the rest because his outside adjusted basis is zero—but the entire $158,665.00 would be disallowed all the same. *Id.* Thus, if his outside basis were zero, the FPAA adjustments would only change the *reason* why Mr. Letko may not deduct the $63,234.00. It would not increase is tax liability. Therefore, the deposit amount would be zero; and the government would *lose* on this motion.

Mr. Letko likewise adopts a self-defeating position. He argues that his basis is a "massive" $243,539.51, presumably because it supports a low tax individual deficiency of $27,666.00. Pl.'s Resp. at 6, 7 n.1; Revised Form 4549-A at 1. But although this theory does indeed reduce Mr. Letko's deficiency, the entire $27,666.00 would be attributable to the $63,234.00 step-two disallowance in the FPAA. Thus, the deposit amount would be $27,666.00 as to tax year 2016—not zero—and Mr. Letko would lose on this motion.

Setting aside the peculiarity of both parties arguing against their own interests, the dispute boils down to the following. As to the 2016 tax year, the jurisdictional deposit calculation boils down to Mr. Letko's adjusted outside basis. The amount as to 2016 is $27,666.00 if Mr. Portice's calculation or the IRS's revised determination is

correct, and $0.00 if the IRS's initial determination is correct. Unfortunately, the Court can say no more, the parties have failed to show their own work or address the other's work. The Court cannot look to the Initial Form 4549-A because it is accompanied by a narrative explanation only. *See* Expl. Adjustments at 1. We cannot look to the Revised Form 4549-A because it does not provide any explanation at all, at least as far as the record is concerned. *See* Revised Form 4549-A. Finally, for his part, Mr. Portice only presents back-of-the-envelope calculations, *see* Pl.'s Resp. Ex. 1 at 1, ECF No. 24-1, which the government does not address in its reply brief, *see* Def.'s Reply at 4 ("[T]he Court need not even reach the issue of basis."). Thus, the parties have now briefed two motions without creating a record on which the Court can rely to find critical jurisdictional facts. As exasperating as that is, in our adversarial system, "a judge . . . does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties." *McNeil v. Wisconsin*, 501 U.S. 171, 181 (1991). The Court therefore refrains from determining Mr. Letko's outside basis.

Turning to the effect of future tax years, it would once again be premature for the Court to make any definitive ruling. Mr. Letko's post-2016 tax returns are not even in the record. The government additionally admits that the IRS has been unable to compute, based on information available to it, "when and to what extent Mr. Letko used [partnership losses attributed to LAM, which is itself owned by Mr. Letko] in future years." Def.'s Reply at 5 n.2. Mr. Letko, for his part, does not address future tax years at all, presumably because the government preserved the issue for a future motion. *See* Pl.'s Resp. at 4–6; Def.'s Reply at 5 n.2.

Furthermore, to determine the effect of future tax years, the parties may need to stipulate to or brief other factual and legal questions, including but not limited to (1) whether a partner's *in*direct interest impacts the computation of affected items, and ultimately the jurisdictional deposit amount; (2) if so, which partnership items adjusted in the FPAA are relevant; and (3) whether Mr. Letko's outside basis in 2016 or future tax years depends on LAM's outside basis. The Court is also concerned that the parties may have failed to bring previous or parallel proceedings to this Court's attention. *See* Revised Form 4549-A at 3 (referring to "stipulated adjustments in the United States Tax Court decision regarding the Partnership return"). That is yet another oversight the parties must correct before the Court can resolve the jurisdictional dispute.

## 2.    Tax refunds owed to Mr. Letko

Although the Court cannot currently determine if the deposit amount is zero, it is appropriate to give the parties guidance on the relevance of alleged tax refunds owed to Mr. Letko. Mr. Letko argues that any deposit requirement should be offset against "over nine million dollars in tax refunds" that the IRS has yet to pay him. Pl.'s Resp. at 7 n.1; Am. Compl. at 2. He does not cite any case law or make any legal argument as to whether the proposed offset is permissible. The government thinks that it cannot, based on three arguments. First, Mr. Letko's claims for refunds "had not been processed or accepted as of the date of the filing of this suit (which is the significant date for

-12-

establishing jurisdiction)." Def.'s Reply at 6. Second, the government argues that the TEFRA deposit requirement cannot be offset by an outstanding refund as a matter of law, especially when the refund pertains to "a different tax year." *Id.* at 7. Third, Mr. Letko "does not allege in his complaint that he is owed these refunds." *Id.*

The Court agrees with the government's third argument. Mr. Letko bears the burden of establish the court's jurisdiction by a preponderance of the evidence. *Tidewater Contractors, Inc. v. United States*, 107 Fed. Cl. 779, 783 (2012). The first requirement—indeed, the zeroth requirement—for meeting that burden is to make allegations in the complaint tending to establish jurisdiction. *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("Determination of jurisdiction starts with the complaint . . . ."). The Court previously permitted him to revise his complaint to "provide reasons . . . to demonstrate compliance with the jurisdiction requirements set forth in [§ 6226(e)]," Order Denying Def.'s First Mot. Dismiss without Prejudice at 1–2, ECF No. 16, yet Mr. Letko failed to allege that the IRS owed him a tax refund. Even on the government's renewed motion to dismiss, Mr. Letko fails to provide any *evidence* suggesting that the IRS owes him money—such as documents showing that his administrative claims were resolved in his favor—and instead relies on the unsupported assertions of his accountant. *See* Pl.'s Resp. at 7 n.1. Therefore, the Court's review will be limited to the jurisdictional allegations set forth in the amended complaint.

### 3. Good-Faith Exception

The parties also disagree as to whether the court may allow Mr. Letko to retroactively cure any defects under the good-faith exception in Section 6226(e)(1). The government argues that Mr. Letko does not fall within the exemption because he made no effort to ascertain the deposit amount prior to filing this suit, and therefore did not make an "attempt," as that word is used in Section 6226(e)(1). *See* Def.'s Mot. at 8 (citing ATTEMPT, Black's Law Dictionary (12th ed. 2024) (defining "attempt" as "[t]he act or an instance of making an effort to accomplish something, esp. without success.")). "Even if this Court were to disregard the word 'attempt' in the statute," the government continues, "it strains credulity to say that Mr. Letko had a good-faith belief" that the deposit was zero. *See* Def.'s Mot. Dismiss at 9. Mr. Letko argues that "this Court should allow [him] to make [the] deposit now . . . because [he] at all times acted in good faith . . . believing the correct deposit was zero." Pl.'s Resp. at 7. He adds that, given the complexity of the accounting required, "it is wholly rational . . . to conclude the required deposit amount would be zero." *Id.* at 8.

As a preliminary matter, the Court disagrees with the government—once again, ironically, not necessarily to the government's detriment—that only pre-filing conduct is relevant to the good faith inquiry. Section 6226(e)(1) provides that the petitioner must "deposit[]" the correct jurisdictional sum "on or before the day the petition is filed"; except that the Court may "by order provide that the jurisdictional requirements of this paragraph are satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount to be deposited is timely corrected." § 6226(e)(1). Thus, the statute first identifies two separate requirements—depositing (1)

the correct amount (2) prior to filing suit—and then allows the Court to relax either or both "requirement*s*," plural. Therefore, the Court undoubtedly has the power to relax the temporal requirement upon a showing of good faith. But that raises a second question: good faith up to what time? On that question, the statute is once again clear. By employing the present perfect "has been," Congress directs this Court's attention to a plaintiff's conduct all the way up to the time at which the order is issued. § 6226(e)(1). If Congress wanted to restrict this Court's inquiry to plaintiff's actions prior to filing suit, it would have used the past perfect "had been." *See* Robert C. Farrell, Why Grammar Matters: Conjugating Verbs in Modern Legal Opinions, 40 LOY. U. CHI. L.J. 1, 19 (2008). The beneficiary of this construction is the government, because a petitioner must show good faith up to the present moment. Our Court decides whether a plaintiff acted in good faith by weighing the "totality of the circumstances." *Kislev Partners, L.P. ex rel. Bahar v. United States*, 84 Fed. Cl. 385, 390 (2008).

Under this standard, the Court finds that Mr. Letko has acted in good faith *so far*. His belief that the deposit amount is zero, far from being incredulous as the government alleges, follows from the IRS's assumptions. From the day of the partnership proceeding until the issuance of the Revised Form 4549-A in October 2023, it was the agency's considered position that Mr. Letko's outside adjusted basis is zero. *See* Initial Form 4549-A at 1; *id.* at 12 (noting that the determination regarding Mr. Letko's outside adjusted basis was made "[d]uring the partnership unified proceeding."); Expl. Adjustments at 1. As explained in Part I.A.2, *supra*, under that position, the deposit requirement would be zero. It would be harsh to punish Mr. Letko simply for "relying on the IRS' representation." *Span Hansa Mgmt. Co. v. United States*, No. C91-15D, 1991 WL 82829, at *3 (W.D. Wash. Apr. 11, 1991).

As for events after October 2023, plaintiff receives the benefit of the doubt because the government has consistently denied that the revised form revised anything. *See* Def.'s Mot. Dismiss at 13; Def.'s Reply at 4. Furthermore, given that the government itself misunderstood the deposit calculations, the Court credits Mr. Letko's assertion that the calculations are "complex." Pl.'s Resp. at 8.

That said, Mr. Letko is put on notice that appeals to complexity and confusion will not be sufficient to demonstrate good faith going forward. Both he and the government are directed to conduct any jurisdictional discovery speedily, thoroughly, and in good faith. The parties should be able to stipulate to many jurisdictional facts, such as: the proper method, under standard taxation and accounting practices, for calculating Mr. Letko's outside basis; the increase in Mr. Letko's tax liability in future tax years due to adjustments of partnership items in the FPAA; and so on.

At the end of discovery, if the facts indicate that the amount is more than zero, he is advised to deposit the sum speedily and file a notice informing the Court of the sum deposited. He is also advised to follow best practices approved of in the case law, which may include depositing an additional sum to demonstrate good faith. *Kislev Partners*, 84 Fed. Cl. at 387. More generally, he should operate "out of an abundance of caution." *Id.*; *see also Gail Vento, LLC ex rel. Vento v. United States*, No. 3:09-CV-

03, 2011 WL 5563509, at *2 (D.V.I. Nov. 8, 2011); *Maarten Investerings P'ship v. United States*, No. 98 CIV. 3839 LMM, 2000 WL 174962, at *2 (S.D.N.Y. Feb. 15, 2000). That said, Mr. Letko is not subject to any heightened standard for showing good faith going forward.

### B.    Statute of Limitations

The government also argues that the suit is time-barred because the proper plaintiff, TMP Mr. Letko, was not substituted in until after the statute of limitations expired. TEFRA provides that the TMP may petition for readjustment "[w]ithin 90 days after the date on which a notice of [the FPAA] is mailed to the partnership." § 6226(a). In this case, the IRS mailed the notice of an FPAA to Mr. Letko on June 13, 2022. FPAA at 1. This petition was filed on September 9, 2022—less than ninety days from June 13. However, the suit was brought in the name of USHS, and the proper plaintiff, TMP Mr. Letko, was substituted in on January 12, 2024, well after the ninety-day deadline. Second Am. Compl., ECF No. 21.

The Court disagrees that the late substitution runs afoul of the statutory time bar. The government concedes that ECF No. 21 is an amended (not supplemental) pleading that relates solely to events that occurred prior to the original complaint and makes the same substantive allegations. Def.'s Mot. at 22. Under RCFC 15(c), so long as an amended pleading does not change the identity of the *defendant*,[8] it "relates back to the date of the original pleading" if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." R. Ct. Fed. Cl. 15(c)(1)(B). "When determining whether an amendment should relate back, the fundamental question is not why the plaintiff failed to act sooner, but rather whether the late addition to the case comes without fair notice to the defendant and would cause undue prejudice." *Holland v. United States*, 62 Fed. Cl. 395, 407 (2004) (internal quotation marks omitted). "[A]n amendment radically changing the party claimant by substituting another is not allowable." *Askins v. United States*, 50 Ct. Cl. 361, 365 (1915).

The amended complaint clearly relates back to the original. It does not change the substance of the allegations whatsoever, and the government must have known that TMP Mr. Letko is the real suing party, because he is the sole natural person owning any interest in USHS. Therefore, the Court concludes that Mr. Letko effectively filed suit before the statute of limitations had lapsed.

### IV.   Conclusion

For the reasons explained above, defendant's renewed motion to dismiss for lack of subject-matter jurisdiction is **DENIED WITHOUT PREJUDICE**, except that the portion relating to statute of limitations is **DENIED WITH PREJUDICE**.

---

[8]    When the amended pleading changes the identity of the defendant, RCFC 15(c)(1)(C) imposes further restrictions.

In addition, the parties **SHALL** confer with each other by **May 15, 2025,** and file by **June 1, 2025,** a joint status report apprising the Court of the following:

(1) Joint stipulations as to jurisdictional facts;

(2) Whether further jurisdictional discovery is needed, and, if so, whether the parties agree on a proposed timeline;

(3) When plaintiff made or intends to make a jurisdictional deposit, and in what amount;

(4) Whether defendant anticipates filing another motion to dismiss for lack of subject-matter jurisdiction, and, if so, whether the parties agree to a proposed timeline.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

-16-